[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15955
Non-Argument Calendar

_____

Agency No. A078-698-312

HUA YAO YANG,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 26, 2013)

Before CARNES, Chief Judge, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Hua Yao Yang, a Chinese national, seeks review of the Board of

Immigration Appeals' final order affirming the Immigration Judge's denial of his

application for asylum, withholding of removal, and relief under the United

Nations Convention Against Torture (CAT).[1]  Yang contends that he suffered past persecution in China based on his wife's coerced abortion.  He also contends he has established a well-founded fear of future persecution based on the likelihood that he will be forcibly sterilized upon his return to China.

## I.

Yang illegally entered the United States in 1999 after he allegedly learned that family planning officials in China planned to abort his fiancée's unborn child.  Although he managed to flee China successfully, local officials apparently caught his fiancée — then six months pregnant — and caused her to miscarry by inducing early labor.  Yang's fiancée eventually fled to the United States in 1998 and Yang, who had made it only as far as Mexico by then, joined her in 1999.  The two were married in New York in 2000 and Yang's wife gave birth to their first child in the United States later that year.[2]

---

[1] Yang does not develop any arguments on appeal regarding the denial of CAT relief. "When an appellant fails to offer argument on an issue, that issue is abandoned." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).  Even if we were to consider that claim, it would still fail because, as this opinion will explain, Yang has not met the lower standard required for the grant of asylum.  See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

[2] Yang contends that he entered into a traditional, or unofficial, marriage with his fiancée in 1998, before the forced abortion occurred, but the IJ found that he was first married in the United States in 2000.  That finding is adequately supported by the record, and we are bound to defer to it under the substantial evidence standard governing our review.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1283–84 (11th Cir. 2001).

In 2000 the former Immigration and Naturalization Service commenced removal proceedings against Yang on the ground that he was in the United States without being admitted or paroled.  Conceding removability, Yang sought asylum, withholding of removal, and CAT relief.

In 2002 the IJ denied Yang's applications for relief.  Addressing the asylum claim, the IJ found that Yang's application was time barred because he failed to demonstrate by clear and convincing evidence that he had filed for asylum within one year of his arrival in the United States.  Even if the application had not been barred, the IJ determined that Yang lacked credibility and failed to establish either past persecution or a well-founded fear of future persecution.  Because Yang failed to qualify for asylum, the IJ concluded that he necessarily failed to meet the more stringent requirements for withholding of removal and CAT relief.  The BIA summarily affirmed the IJ's ruling.

In 2004 Yang successfully moved to reopen his case and the IJ found that changed circumstances — the birth of his second child and the impending birth of his third child — permitted Yang to overcome the one-year time limit for seeking asylum.  The IJ then considered new evidence purporting to show that Yang and his wife faced persecution in China "ranging from forced abortion and sterilization to the denial of government benefits to [their] children."  Despite this new

evidence, the IJ again concluded that Yang had failed to testify credibly or carry his burden of proof and therefore denied relief.

The BIA affirmed the IJ's decision but later granted Yang's motion to remand his case for consideration of new evidence:  a letter from the family planning office of his hometown instructing him to report for sterilization within one week of returning to China.  Finding that the letter had not been sufficiently authenticated, the IJ accorded it only minimal weight and concluded that while it may have been sufficient to make Yang subjectively fearful of future persecution, it was not enough to raise such fear in an objective person.  As a result, the IJ again found that Yang had failed to establish a well-founded fear of persecution.

Even so, the IJ certified Yang's case to the BIA.  The BIA adopted the IJ's 2002 determinations regarding past persecution and agreed with the IJ's findings about the authenticity of the family planning document.  The BIA concluded that Yang was ineligible for relief because he failed to establish a well-founded fear of future persecution.

The BIA also rejected Yang's final effort to avoid removal by appealing for prosecutorial discretion.  Yang had contended that a developmental disorder suffered by one of his sons entitled him to termination of removal proceedings as a "low priority removal case" under the Secretary of the Department of Homeland Security's memorandum of August 18, 2011.  The BIA rejected that argument,

noting that Yang had not demonstrated how his son's disability made his case "low priority." The BIA also remarked that the Department of Homeland Security had vigorously prosecuted Yang's removal to date and was unlikely to grant him favorable treatment now.

## II.

"Where the BIA issues a decision, we review that decision, except to the extent that it expressly adopts the IJ's opinion." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230 (11th Cir. 2006). "Insofar as the BIA adopts the IJ's reasoning, we review the IJ's decision as well." Id. Here, we review both the BIA's and IJ's decisions on asylum and withholding of removal because the BIA adopted the IJ's reasoning. We review only the BIA's decision on prosecutorial discretion because only the BIA considered that issue.

We review administrative factual findings, including determinations on eligibility for asylum and withholding of removal, under a "highly deferential" substantial evidence test and "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283–84 (quotation marks omitted). We will reverse only if the record compels reversal. Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002).

An alien seeking asylum "must, with specific and credible evidence, establish (1) past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion; or (2) a well-founded fear of future persecution on account of a statutorily-protected ground." Chen, 463 F.3d at 1231. The Immigration and Nationality Act recognizes forced abortion and involuntary sterilization as grounds to prove past and future persecution:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42). Under that provision, it is possible for one spouse to claim persecution when the other undergoes a forced abortion or involuntary sterilization. However, such a claim will succeed only if the spouses are legally married at the time, Yang v. U.S. Att'y Gen., 494 F.3d 1311, 1318 (11th Cir. 2007), and if the spouse who does not physically undergo the procedure proves that he resisted it and endured personal persecution as a result, Yu v. U.S. Att'y Gen., 568 F.3d 1328, 1332–33 (11th Cir. 2009).

A well-founded fear of future persecution also requires an applicant to prove both a "subjectively genuine and objectively reasonable" fear. Silva v. U.S. Att'y

6

Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." Al Najjar, 257 F.3d at 1289. "[T]he objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (quotation marks omitted).

In this case, the BIA and IJ reasonably found that Yang had failed to establish either past persecution or a well-founded fear of future persecution, as required to be eligible for asylum. Yang himself admitted he and his current wife were not legally married at the time of her 1998 abortion, and the record shows that he did not personally endure persecution as a result of resisting that procedure. For those reasons, he failed to prove that he suffered past persecution on account of a statutorily protected ground. See Yang, 494 F.3d at 1318; Yu, 568 F.3d at 1332–33.

Yang also failed to establish a well-founded fear of future persecution. Yang claimed that his American-born children would be denied Chinese benefits, that he would suffer economic harm for violating family planning rules, and that he would be forcibly sterilized upon return to his native country. He has offered an assortment of evidence in support of his contentions, including family planning regulations from Fujian province, an affidavit from an American demographer, and

a letter from Chinese officials requiring him to report for sterilization within a week of his return.

Reviewing that evidence, the BIA and IJ reasonably found that Yang did not have a well-founded fear of persecution.  As to the fears that his children will be denied benefits and that he will suffer economic harm, the record supports the BIA's and IJ's determination that his fears were neither subjectively genuine nor objectively reasonable.  Yang offered Chinese regulations and the demographer's affidavit to support his claims, but the regulations were unauthenticated and the affidavit was not entitled to much weight because the demographer had no personal knowledge of conditions in China.  The BIA and IJ reasonably discounted these documents.  Even if Yang's fears had been subjectively genuine and objectively reasonable, the record supports the BIA's and IJ's alternative determination — based on the Department of State's 2006 Country Report on China — that enforcement of family control polices in Fujian province did not rise to the level of persecution.  See Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004) (finding that the BIA is entitled to "rely heavily" on State Department evidence because it may be the best source of information regarding conditions in a foreign country).

As to Yang's assertion that he would be forcibly sterilized, the BIA and IJ found that he genuinely fears sterilization as a result of the letter he received from

8

family planning officials.  However, the record supports their determination that this fear is not objectively reasonable.  According to Yang, he sought out the attention of the very officials he supposedly feared in order to get that letter and its lack of authentication casts serious doubt on its genuineness.  As a result, the BIA and IJ reasonably discounted the letter's value, especially in light of the State Department's 2007 Country Report for China, which noted widespread fraud and fabrication of such documents in Yang's home province of Fujian.  See Reyes-Sanchez, 369 F.3d at 1243.[3]

Finally, Yang argues that his case warrants prosecutorial discretion.  The executive branch has nearly absolute discretion on whether to prosecute a removal case.  See Heckler v. Chaney, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655 (1985).  "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review" because it depends on factors such as government enforcement priorities.  United States v. Shaygan, 652 F.3d 1297, 1314 (11th Cir. 2011) (quotation marks omitted).  The decision on whether to prosecute is not appropriate for judicial consideration and is committed to the discretion of the Attorney General and his agents.  Reno v. American–Arab Anti–Discrimination Comm., 525 U.S. 471, 489–92, 119 S.Ct. 936, 945–947 (1999)

---

[3] Because Yang did not meet the standard of proof for asylum, he cannot meet the higher standard for withholding of removal.  See Sepulveda, 401 F.3d at 1232–33 (explaining that the standard for withholding of removal is more stringent than the standard for asylum relief).

(explaining the importance of inherent prosecutorial discretion as to whether to bring removal proceedings).

**PETITION DENIED.**